# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| | ) CASE NO. 08-61964 |
| | ) |
| IN RE: | ) CHAPTER 7 |
| | ) |
| JAMES HUNTER COX and LISA | ) JUDGE RUSS KENDIG |
| VALENTE COX, | ) |
| | ) **MEMORANDUM OF OPINION ON** |
| Debtors. | ) **MOTION TO DISMISS (NOT** |
| | **INTENDED FOR PUBLICATION)** |

This matter is before the Court on the Motion of the U.S. Trustee to Dismiss for Abuse, filed by the U.S. Trustee ("UST") on August 25, 2008. Debtor filed an objection on September 15, 2008. The Court held a hearing on the motion on October 7, 2008, at which the Court took the matter established a schedule for the submission of supplemental briefs.

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtors filed for protection under Chapter 7 of the Bankruptcy Code on June 10, 2008. On their petition, they indicated that their debts are "primarily business debts." The overwhelming majority of their business debt is contained in a single ostensible obligation, a loan guarantee ("Guaranty") in favor of Huntington Bank with an estimated value at filing of $580,000.00, which Mr. Cox executed on behalf of Globalnet Solutions, Inc. Mr. Cox and nine other co-guarantors covenanted to issue such guarantees in a "Business Loan Agreement" ("Agreement") dated March 14, 2005, on a note ("Note") with an initial principal of $750,000.00. Mr. Cox did not personally sign either the Note or the Agreement, but did execute the Guaranty as provided in the Agreement. The Guaranty is an unconditional and continuing guaranty of payment.

The exact amount of the remainder of Debtors' business debts is not readily ascertainable because the parties have disagreed on the characterizations of lesser obligations,[1] but these differences are irrelevant. Debtor's totals, which reflect a lowered balance on the Huntington guaranteed obligation of $547,350.00 (as of September 2008),[2] posit Debtors' other business debt at $134,990.00. UST's calculations posit Debtors' other business debt at $113,047.00. (Mot. to Dismiss 4.) Debtor's consumer debts total $617,730 under Debtors' calculations (Obj. 7) and $634,673.00 using UST's. (Mot. to Dimiss 5.) Therefore, without counting the loan guarantee in full or in overwhelmingly large part[3] as a personal business debt of Debtors', their debts are primarily consumer debts.

Because Debtors' position is that their debts are primarily business debts, they did not fill out Form B22A (the "means test"), to determine whether their case presumptively abuses the provisions of chapter 7.

On August 25, 2008, UST filed the instant motion to dismiss. UST argues that Debtors should not be permitted to count the value of the Guaranty as a business debt, or at least not count it in full. UST notes that Globalnet itself is current on its obligations under the underlying note to which Mr. Cox' guarantee applies, the debt owed to Huntington bank may be secured by collateral, that the principal balance outstanding on the note may be reduced by the sale of assets, and that the principal balance will continue to decline as Globalnet makes payments to Huntington (and therefore with no depletion of Debtors' personal assets). In its motion, UST included hypothetical figures showing that even were the obligation on the guarantee estimated at a value as low as $520,000 instead of $580,000, Debtors' debts would be primarily consumer debts; these figures are subject to the unresolved disputes over the characterization of smaller debts in Debtors' schedules in footnote 1, supra, but are otherwise accurate. UST also filed a hypothetical B22A projecting Debtors to have a 60-month disposable income (line 51) of $159,117.00.

---

[1] In its Motion to Dismiss, UST characterizes the separate $10,000.00 credit card obligation to Huntington Bank as a consumer debt (Mot. to Dismiss 5); in their Objection, Debtors characterize it as a business debt. (Obj. 6.) UST also tallies a $15,000.00 obligation to Richland Bank as consumer debt, while counting a $5,000.00 obligation to Richland Bank for "business overdraft" as business debt. (Mot. to Dismiss 5.) In its Objection, Debtors state that their schedules were inaccurate as filed and that the obligations to Richland Bank should have been scheduled as $10,000.00 and $5,000.00, respectively; however, Debtors also count both of these totals as business debts. (Obj. 7, 7 n.4.)

[2] Debtors use this lower total in the calculations in their Objection, but nevertheless contend that the relevant figure is the value of the obligation on the petition date, $580,000.00.

[3] UST, in its motion, provided a hypothetical calculation showing that Debtors' debts would still be more than 50% consumer debts even if the guarantee were counted as a personal business debt of Debtors' if the guarantee were valued at $520,000.00. (Mot. to Dismiss 4-5.) The Court does not adopt this as a finding of fact because of the aforementioned disparities in the parties' characterizations of certain other, smaller debts on Debtors' schedules. However, the Court finds it illustrative as a ballpark figure.

Debtors filed their objection on September 15, 2008, taking the position that Mr. Cox' contingent liability on the Huntington guarantee entitles them to count the full face value of that guarantee as a business debt of Debtors' for the purposes of the chapter 7 means test, and that doing so results in Debtors having predominantly business debts, not consumer debts.

At the hearing on October 7, 2008, UST and Debtors stipulated[4] that Globalnet is "not in payment default" under the loan documents. Debtors raised the point that being current on its payments does not necessarily mean that an "event of default" under the loan documents has not transpired; Debtors observed that under the loan documents, the declaration of their bankruptcy was itself an "Event of Default" under the loan documents. Debtors have submitted a commercial loan invoice ("Invoice") from Huntington to Globalnet dated August 29, 2008, showing the entire balance of the loan–$547,350.10–due by September 15, 2008. (Debtors' Ex. A.) The Court presumes that Huntington did not in fact force the issue at that time, since in such an event, either Globalnet would have failed to produce the money or would have paid the entire balance due; in either case, the parties could not have stipulated that Globalnet was current on its payments as of October 7. The terms under which Huntington forsook its right to call the loan immediately were not discussed at the hearing. Debtors' counsel did stipulate at the hearing, however, that, while Mr. Cox' filing for bankruptcy was an event of default under the loan documents, Debtors' argument did not rest on this; Debtors' argument is that they face a contingent liability to Huntington of the entire balance on the Note, and that they should be allowed to declare that balance as a business debt.

UST also makes a further and separate argument in favor of its Motion to Dismiss vis-a-vis Mrs. Cox, based on the fact that only Mr. Cox signed the Guaranty.

## LEGAL ANALYSIS

By request of the parties at the October 7 hearing, the Court confines its opinion to a single issue: How should a contingent liability be counted for the question of whether a debtor's debts are "primarily consumer debts" within the meaning of 11 U.S.C. § 707(b)?

A debtor's debts are primarily consumer debts if more than half of the dollar amount such debtor owes are consumer debts. Zolg v. Kelly (In re Kelly), 841 F.2d 908, 913 (9th Cir. 1988); Stewart v. U.S. Trustee (In re Stewart), 175 F.3d 796, 808 (10th Cir. 1999); In re Hlavin, 394 B.R. 441, 447 (Bankr. S.D. Ohio 2008). If Debtors' debts are primarily consumer debts, then Debtors must complete the means test form and be evaluated for prospective abuse of the provisions of chapter 7 under that subsection. If not, then § 707(b)(2) is inapplicable to this case. The only strenuously disputed variable in this equation is the Guaranty. On its face, the Guaranty is business in nature, not consumer, and no party has contested that it is otherwise. Therefore,

---

[4] This stipulation was expressly cabined to this round of briefing on UST's Motion to Dismiss and is not binding to the extent that further hearings on this or other issues later in this case are necessary.

3

to the extent that it is a debt, it will be a business debt. Rather, the dispute is over whether it should count as a debt at all, and if so, to what extent.

The definition of a "debt" under the Code actually begins with the definition of a "claim." The Code defines a "claim" as, *inter alia*, a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured ..." 11 U.S.C. § 101(5)(A). Huntington has a contingent claim against Mr. Cox: if Globalnet fails to pay, then Huntington may recover from Mr. Cox personally. A "debt," in turn, is "liability on a claim." 11 U.S.C. § 101(12). The practice of the federal courts has been to read "liability" in the definition of debt as has having no limiting effect: the definitions of "claim" and "debt" are coextensive. Johnson v. Home State Bank, 501 U.S. 78, 85 n.5 (1991); Glance v. Carroll (In re Glance), 487 F.3d 317, 321 (6th Cir. 2007); CPT Holdings, Inc. v. Indus. & Allied Employees Union Pension Plan, Local 73, 162 F.3d 405, 407 (6th Cir. 1998). The two concepts are mirror images: "a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." Matter of Knight, 55 F.3d 231, 234 (7th Cir. 1995) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 23, reprinted in 1978 U.S.C.C.A.N. 5787, 5809; H.R.Rep. No. 595, 95th Cong., 2d Sess. 310, reprinted in 1978 U.S.C.C.A.N. 5963, 6267) (quotation marks in original and in quote therein). A guaranty is a classic example of a contingent obligation. Matter of Fox, 64 B.R. 148, 153 (Bankr. N.D. Ohio 1986). Therefore, because Huntington has a contingent claim against Mr. Cox, Mr. Cox has a debt to Huntington within the meaning of 11 U.S.C. § 101(12), and that debt is non-consumer in nature because it was not "incurred by an individual primarily for a personal, family, or household purpose" under 11 U.S.C. § 101(8).

The Court turns next to the substantially thornier issue of the value of the debt which Debtors may claim when ascertaining the applicability of 11 U.S.C. § 707(b)(2).

When statutory language is plain, the sole function of the courts is to enforce it according to its terms, unless the disposition required by the text would be absurd. Till v. SCS Credit Corp., 541 U.S. 465, 486 (2004). Nothing in the language of § 707(b) suggests that debts on contingent claims are not "debts" for the purpose of determining whether a debtor has "primarily consumer debts" in that subsection. However, this does not lead inexorably to the conclusion that Debtors ask the Court to draw from this fact, namely, that debtors can therefore declare the entire nominal value of a contingent liability for the purpose of § 707(b) under all circumstances. Not only is this not a textual requirement, but it would be an absurd result if it were: Under Debtors' interpretation of the law, all ten guarantors on the $750,000.00 Note could have filed for chapter 7 protection the day after signing that Note, and if their consumer debts were less than that amount, all ten could escape the scrutiny of the means test by claiming to be business debtors in an amount totaling ten times the outstanding balance, notwithstanding the fact that *none* of them faced a payment demand from Huntington. Indeed, there would be caps on neither the number of debtors who could simultaneously count the same contingent liability, nor on the nominal amount of such liability. The potential for abuse of such a rule is self-evident.

4

However, because the terms "debt" and "claim" are coextensive mirror images of one another, the proper analysis for analyzing contingent liabilities is the same as that for analyzing contingent claims: they are to be estimated, using the same rules (or mirrors of those rules, where applicable) for estimating contingent claims under 11 U.S.C. § 502(c). That section allows for the estimation of "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c)(1). The Code is silent about what methods to use and factors to consider in estimating contingent claims; this has long been held to mean that "Congress intended the procedure to be undertaken initially by the bankruptcy judges, using whatever method is best suited to the particular contingencies at issue." Bittner v. Borne Chemical Co., Inc., 691 F.2d 134, 135 (3d Cir 1982). Courts have used methods running "the gamut from summary trials to full-blown evidentiary hearings to a mere review of pleadings [and] briefs." In re Chavez, 381 B.R. 582, 587 (Bankr. E.D.N.Y. 2008). Although bankruptcy courts are bound by legal rules governing the ultimate value of claims, there are no other limitations on a court's authority to estimate claims, and the method chosen will be reviewed only for abuse of discretion. Colo. Mountain Express, Inc. v. Aspen Limousine Serv., Inc., 193 B.R. 325, 337 (D. Colo. 1996).

At least one bankruptcy court in this district has held that the ability of the primary obligor to repay the obligation is a relevant consideration in estimating a creditor's contingent claim under a guaranty. See Fox, 64 B.R. at 154 ("Estimation of a claim based upon a personal guaranty must entail consideration of the primary obligor's ability to pay, including a review of the primary obligor's assets and liabilities."). In addition, the Seventh Circuit has held that "[t]o value contingent liability it is necessary to discount it by the probability that the contingency will occur and become real." Matter of Xonics Photochemical, Inc., 841 F.2d 198 (7th Cir. 1988).

When Debtors filed bankruptcy, Globalnet was current on its payments to Huntington, and it remained current as of the October 7, 2008, nearly four months later. No party has raised any factual issues that would call into question Globalnet's ability to continue servicing its obligations under the Note.[5] However, the Court has conducted no factfinding on this issue, and the lone fact that Globalnet was not in payment default as of October 7, 2008 is insufficient

---

[5] The Court is aware that, under the Agreement, the insolvency of a guarantor is also an "Event of Default." However, per Debtors' counsel at the October 7, 2008 hearing, the fact that the filing of a bankruptcy is an event of the default under the loan documents is not the basis of Debtors' argument, and any issues that this might raise have not been briefed and were not within the scope of the issue that the Court took under advisement following the October 7, 2008 hearing. Even without such briefing, however, the Court is inclined to be skeptical of allowing Debtors to use the filing of the bankruptcy to effectively conjure the $580,000 paper liability that would allow them to escape the scrutiny of the means test. This would evoke the same equitable and policy concerns as valuing contingent liabilities of secondary obligors at their maximum nominal value regardless of the financial position of the primary obligor: in this case, each of the ten co-guarantors could have filed for bankruptcy at the same instant immediately after the $750,000 Note was signed, claimed that they were each individually liable for the entire balance on the Note because of their respective guaranties notwithstanding Globalnet's financial health, and all escaped the scrutiny of the means test even if Globalnet itself were able to immediately pay the entire balance in full. The same note–a note that is not in payment default and, but for the bankruptcy filings of its guarantors, would not be in technical default–could theoretically be used to shield an infinite number of debtors from the means test.

5

information to support a finding of fact on Globalnet's financial health. Further factfinding will therefore be necessary to estimate the value of Mr. Cox' debt. The Court is not willing to declare, as UST urges, that because Globalnet was current on its payments as of the petition date, the appropriate discount is effectively one hundred percent, resulting in a debt of zero. Such findings are reserved for cases in which the underlying claim is likely to prove legally meritless, not cases in which a legally meritorious claim turns on the occurrence of a factual predicate, however remote. See, e.g., In re Kaplan, 186 B.R. 871 (Bankr. D.N.J. 1995) (claim was estimated to have a value of zero because default had been legally waived).

Therefore, the Court can neither grant nor deny UST's motion at this time. The Court will convene a status conference on the remaining issues, including the need for further evidence on the probability of the default of the primary obligor. Because resolution of this issue may prove dispositive, the Court does not reach the issue of whether Mrs. Cox should be analyzed separately based on the fact that she did not execute the Guaranty.

An order consistent with this opinion will be entered contemporaneously.

/s/ Russ Kendig

RUSS KENDIG
U.S. BANKRUPTCY JUDGE

6

**Service List:**

Anthony J DeGirolamo
116 Cleveland Ave., N.W.
Suite 307
Canton, OH 44702

Donald M Miller
1400 Market Ave N
Canton, OH 44714-2608

James Hunter Cox
675 Lexington Ontario Rd
Mansfield, OH 44903

Josiah L Mason
153 W Main St
PO Box 345
Ashland, OH 44805-2219

Dean Wyman
Office of the US Trustee
Howard M. Metzenbaum U.S. Court House
201 Superior Aveneue, Suite 441
Cleveland, OH 44114-1240